UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | No. 17 CR 149 |
| v. | |
| | Honorable Virginia M. Kendall |
| MARK MCGILL | |

**GOVERNMENT'S POSITION PAPER AS TO SENTENCING FACTORS**

The United States of America, through JOHN R. LAUSCH, JR., United States Attorney for the Northern District of Illinois, submits its sentencing memorandum as to defendant Mark McGill. For the reasons set forth in more detail below, the government requests that the Court impose a custodial sentence within the advisory Guidelines range of 168 to 210 months and a life term of supervised release with conditions, and order restitution.

## I. BACKGROUND AND OFFENSE CONDUCT[1]

For years, defendant nurtured a secret interest in the sexual abuse and exploitation of young children. In 2009, the defendant possessed thousands of images of child pornography, mostly depicting nude prepubescent boys. Defendant was indicted and was later convicted after a jury trial. *See United States v. Mark McGill*, 09 CR 770. Following the conviction, defendant was sentenced to 65 months' imprisonment and began serving an 84 months' supervise release term on November 21, 2014.

---

[1] Information in this section and throughout this memorandum is based on Probation's Presentence Investigation Report and Sentencing Recommendation, the Government's Version of the Offense, and materials previously produced to the defense.

Just over two years later, while on supervised release, defendant possessed thousands of images and videos depicting child pornography on a phone he hid from his probation officer. Defendant's conduct violated both child exploitation laws and the terms of his supervised release. His collection – over 6,000 images and 600 videos – included images and videos of infants, toddlers, and other prepubescent children performing sex acts and being penetrated. Defendant also possessed less egregious images, although they still featured young children being sexually exploited, posing nude and exposing their genitals to the camera. After being charged by indictment in this case, defendant filed an affidavit and a motion to suppress his cellphone and the thousands of images and videos of child pornography found therein. In an affidavit filed with this Court, defendant challenged the observations made by his assigned probation officer and falsely claimed that his cellphone was inoperable, even though he used the phone hours before it was seized and knew it was operational.

The one-count indictment in this case charged defendant with possession of child pornography, in violation of 18 U.S.C. § 2252A(a)(5). On June 26, 2018, defendant pled guilty pursuant to a plea agreement. R. 63.

Background

In 2012, a jury convicted defendant of one count of distributing child pornography and one count of possessing child pornography. The defendant was sentenced to 108 months' imprisonment on each count to run concurrently and 20

years' supervised release. Following an appeal, however, the Seventh Circuit reversed the conviction on the distribution count.

On or about November 21, 2014, defendant was resentenced for one count of possessing sexually explicit images of minors before the Honorable Joan B. Gottschall, in violation of 18 U.S.C. § 2252A(a)(5)(B). The district court sentenced defendant to 65 months' imprisonment and 84 months' supervised release. Defendant completed his term of imprisonment and began serving supervised release on or about November 21, 2014. Defendant's supervised release history reflects that defendant had a history of violating the terms of his supervised release.

On February 23, 2015, just three months after defendant's release from imprisonment, defendant's probation officer discovered defendant had an unmonitored cellphone with internet access. The probation officer instructed defendant to discard the phone as soon as possible and showed the defendant phones that he could purchase without internet access.

While on supervised release in October 2015, a probation officer discovered that defendant had viewed sexually stimulating videos and images of minors on his monitored cellphone. Specifically, defendant viewed a video of two children in a bathtub and a video that depicted a fully nude prepubescent boy being bathed by his mother.

3

On or about June 17, 2016, defendant failed a polygraph test administered as part of his sex offender treatment program. Deception was detected when defendant answered "no" to the following questions:

    i.  Since your last polygraph, have you viewed any pornography?
    ii.  Since your last polygraph, have you had any unauthorized contact with any minors?
    iii. Since your last polygraph, have you accessed the Internet without authorization?

On or about September 29, 2016, defendant failed another polygraph test. Specifically, deception was detected when defendant answered "no" to the following questions:

    i.  Since your last polygraph have you had sexual contact with a minor?
    ii.  Since your last polygraph, have you had sexual contact with a minor in any way?

When asked about the test results, defendant maintained that he gave honest answers on both occasions.

<u>Offense Conduct</u>

During the late morning hours of February 3, 2017, defendant's probation officer conducted a routine and unannounced home visit at the defendant's residence. The probation officer discovered the defendant possessing an unmonitored cellphone, which was not approved to be in defendant's possession.

According to service provider records, cellphone service for the unmonitored phone began on December 19, 2015, only two months after probation caught defendant viewing sexually stimulating material on his monitored cellphone.

4

The subsequent search of the unmonitored phone revealed that it contained thousands of files that appeared to depict child pornography. Specifically, on defendant's cellphone, he possessed 2,559 images and 29 videos of child pornography. Of those files, 1,240 appeared to depict prepubescent children, 44 appeared to depict an infant or toddler, and 10 depicted sadistic and masochistic conduct. Defendant possessed 4,095 images and 599 videos of child pornography on the 32-gigabyte SanDisk card contained in defendant's cellphone. Of those files of child pornography, 926 appeared to depict prepubescent children, 78 depicted an infant or toddler, and 10 depicted sadistic and masochistic conduct.

For example, one video contained on defendant's cellphone, with a title that begins, "p101 12 blue vibrator goes all the way in boys butt," is approximately 34 seconds in length. The video depicts what appears to be a prepubescent boy's anus being sodomized by a blue vibrator manipulated by what appears to be a male's hands. Another video contained on defendant's cellphone, with a title that begins, "2YO Asian Boy Sucks Penis of another 2YO Boy," is approximately one minute and one second in length. The video depicts a minor, who appears to under 12 years old, performing oral sex on a nude toddler, who appears to be approximately two to five years old.

According to a forensic extraction report of the cellphone, from November 7, 2016 until February 3, 2017, terms searched on the YouTube Application consistently referenced young naked boys. For example, from 3:31 a.m. to 3:49 a.m. on February

3, 2017 (the same day the probation officer visited defendant and seized his phone) defendant ran four separate searches on the YouTube Application, one of which was "the joy of sex education." On January 29, 2017, defendant searched "diaper change boy" on the YouTube Application. On January 13, 2017, defendant searched "toddler penis" on the YouTube Application. Defendant similarly searched for child pornography on his phone using Mozilla Firefox, a web browser. On August 20, 2016, defendant entered the search terms "best boylover movies." On April 16, 2016, defendant entered the search terms "boy links."

The defendant also visited websites with titles indicative of child pornography. On February 3, 2017 at approximately 3:00 a.m., the day the phone was seized, defendant visited a website titled "Boy Vids v4.0 · View topic - 12yo First Cum." Exhibit 2 at 63. On February 2, 2017, the day before the phone was seized, defendant visited a website titled "Boy Vids v4.0 · View topic - Little boy sucking man" for the third time on the cellphone. *Id.* at 64.

Despite the fact that the defendant used the cellphone continuously, up to the very day of the probation officer's visit, the defendant filed an affidavit with demonstrably false statements in an attempt to suppress the thousands of images of child pornography contained on his cellphone. Specifically, defendant alleged that his seized cellphone was inoperable and that possessing an inoperable phone did not violate the terms of his supervised release. Defendant's affidavit included the following false statements:

6

   iii. <u>Paragraph 10</u>: [Probation Officer] H.W. then tried to turn the phone on but was unable to do so. The Phone would not turn on.

   iv. <u>Paragraph 12</u>: After he took the phone, [Probation Officer] H.W. asked me if he was going to find anything on the phone. I responded that he would, but I never said anything about child pornography being on the phone.

In the Court's ruling on the motion to suppress, the Court stated, "McGill's claims about key facts were repeatedly proved untrue at the hearing. Most notably, the phone *did* work and *did* contain images of child pornography." Docket No. 56 at 19. Similarly, the Court highlighted:

   i. "McGill made three incriminating statement reflecting his awareness of the contraband and the violation." Docket No. 56 at 20.

   ii. "Evidence presented at the hearing established that McGill admitted to Officer [H.W.] that the phone contained images of child pornography." Docket No. 56 at 21.

   iii. "Evidence presented at the hearing also established that the phone was operable and Officer [H.W.] powered it on during the home visit." Docket No. 56 at 21.

   iv. Mejia [a FBI forensic examiner confirmed] that she was able to power on the phone without difficulty and also observed that the wallpaper image was the face of a young boy. Thus, McGill's assertion in his affidavit that the phone did not work is not credible." Docket No. 56 at p. 21-22.

## II.   GUIDELINE CALCULATIONS AND APPLICABLE STATUTORY MINIMUM SENTENCE

The government does not have any objections to the Presentence Investigation Report ("PSR"). The PSR correctly calculates the advisory guidelines range in this case as 168 to 210 months' imprisonment based on an offense level of 33 and a criminal history category of III. Defendant's count of conviction carries a mandatory 10 year term of imprisonment.

7

### III. THE FACTORS SET FORTH IN 18 USC § 3553(a) WARRANT A SENTENCE WITHIN THE GUIDELINES RANGE

The advisory Guidelines range is the starting point and initial benchmark for determining the appropriate sentence for a defendant. *United States v. McLaughlin*, 760 F.3d 699, 708 (7th Cir. 2014). Although a sentence within the Guidelines range is presumptively reasonable, *United States v. Cano-Rodriguez*, 552 F.3d 637, 639 (7th Cir. 2009), the court must consider the factors set forth in 18 U.S.C. § 3553(a) in determining an appropriate sentence. Further, sentences within the advisory Guidelines range help avoid unwarranted sentencing disparities. *See United States v. Reyes-Medina*, 683 F.3d 837, 841 (7th Cir. 2012) (a sentence within the advisory guidelines range necessarily complies with 18 U.S.C. § 3553(a)(6)); *see also United States v. Orsburn*, 525 F.3d 543, 547 (7th Cir. 2008) (courts avoid sentencing disparities by starting with the advisory guidelines range and making adjustments at the margin). Accordingly, in this case a sentence within the advisory Guidelines range is sufficient, but not greater than necessary, to reflect the seriousness of defendant's offense, promote respect for the law, provide just punishment for defendant's crime, and afford adequate deterrence.

### A. The Nature and Circumstances of the Offense

The defendant possessed approximately 7,282 files of child pornography on February 3, 2017. Those images and videos include depictions of children as young as infants, children engaged in sex acts with other children, and sexual penetration of children with foreign objects, as noted above. The defendant kept all these images

and videos on a cellphone that he was prohibited from possessing pursuant to his conditions of supervised release.

Defendant's possession of child pornography is not a victimless crime. Each child depicted in the images and videos went through a horrible experience and continues to relive that suffering and endure new suffering because of defendant's actions. At the defendant's sentencing in December 2012, the defendant appeared to express remorse for the victims to his crime:

> How I got to become the person arrested on September 21st, 2009, has been a very difficult question to answer. The things that I've said and done have made me feel deeply ashamed and embarrassed. I was selfish and immature, only thinking of myself and taking everything for granted. I was careless and ignorant to the lives of the children who were devastated to create the images that I possessed. Being a victim of multiple and various abuses in my past I can only imagine the pain and anguish that any child or his family have had to endure. The victim impact statements have had a great effect on putting some of their emotions into perspective, and my sincerest sympathy goes out to the hearts of any child who has ever been abused. I'm truly sorry for what I've done. Only now do I realize the full extent and far-reaching effects of my actions. I apologize and ask for the Court's forgiveness as well as the forgiveness of anyone else who has been hurt by my actions.

Defendant's remorse was short-lived. Instead of complying with his supervised release terms and treatment, the defendant quickly acquired another cellphone and downloaded vast quantities of child pornography despite his own acknowledgement in open court that children were "devastated to create the images" that he possessed.

Defendant's victims in this case are numerous. Here, defendant possessed images and videos of approximately 23 different victim series representing one or more children who have been identified by law enforcement. A victim in one of those

victim series submitted a Victim Impact Statement, which was submitted to the Court, Probation and the defense as an exhibit to the Government's Version with the PSR. The government directs the Court's attention to an excerpt from the Victim Impact Statement, which describes what it feels like to have pictures and videos of one's abuse irrevocably and repeatedly circulated on the internet for others' sexual gratification:

> **"Andy" (5/6/2014)**
>
> The fact that my images are out there, and are being shared every day, is something that I think about and have to deal with every day of my life.
>
> Since learning about the widely shared pornography, I have experienced negative changes in my life, my personality, my outlook on life and the world, and my ability to trust and interact with people. One of the main issues I deal with is anger – especially to male strangers. I am naturally suspicious, even when I see people in grocery stores or walking around my community. I fear that someone has viewed the pornography showing my abuse. I fear that I will be recognized. … I find it difficult to regulate my hatred, suspicions and fears. Unfortunately, to cope with my anger and to deal with the knowledge of my abuse being looked at – probably on a daily basis – I also turn to other destructive diversions such as drugs and alcohol. How else can someone live with what is happening to them over and over again? …
>
> I THINK ABOUT THE CHILD PORNOGRAPHY EVERY DAY! There is not one day that goes by that I don't think, with hatred, about the sick and disgusting people who view, trade, save and "get off" on my abuse when I was just a little kid and couldn't defend myself. It is sickening.

Unfortunately, not all of the victims depicted in the images that defendant possessed have been identified. But this does not make those children any less real or any less victims of defendant's sexual exploitation.

10

<u>Specific Offense Characteristics</u>

Each of the Guidelines provisions at issue here is a sensible factor for the Court to consider when evaluating the seriousness of defendant's crimes. And further, defendant earned each of the specific offense enhancements to reach his Guidelines range.

The Court should not disregard the four-level enhancement for possession of material that portrays sadistic or masochistic conduct or other depictions of violence. This enhancement applies regardless of whether the defendant specifically intended to possess or receive such material. However, in this case, the defendant possessed files that depicted sadistic or masochistic conduct and sought out that material, as evidenced in his cellphone web history, which is excerpted below:

| Webpage Title | Last Visited | Visits |
|---|---|---|
| Boy Vids v4.0 • View topic - Farewell BV4/Simba Anal 2016 | 12/30/16 | 4 |
| Boy Vids v4.0 • View topic - Man fuck latin boy | 1/11/17 | 3 |
| Boy Vids v4.0 • View topic - Young boys fuck – real or pretend? (Repost by request) | 1/12/17 | 2 |
| Boy Vids v4.0 • View topic - 6yo deepfuck TLZ | 1/17/2017 | 2 |
| Boy Vids v4.0 • View topic - Cookie Boy Toddler Anal | 1/24/17 | 1 |
| Boy Vids v4.0 • View forum – Hardcore | 2/3/17 | 209 |

Had defendant drawn the line at sadistic or masochistic child pornography and excluded such images from his collection, there would be no four-level enhancement under Guideline § 2G2.2(b)(4). However, defendant possessed images and videos, which included depictions of sadistic and masochistic conduct – multiple images of young boys being penetrated either by adult males or foreign objects. This

enhancement is appropriate here. There is a meaningful difference between a child being exploited by being photographed or recorded nude and a child being exploited by sadistic and masochistic acts. Greater punishment for the latter is accounted for in the Guidelines with good reason.

Next, defendant challenges the two-level enhancement for attempting to obstruct and impede the administration of justice. The defendant, through his affidavit, proffered false statements to the Court in an attempt to mislead the Court into suppressing key evidence of his guilt. The defendant's false statements provided in his affidavit to the Court include that: 1) the phone no longer worked; 2) probation officer H.W. tried to turn the phone on, but was unable to do so; and 3) McGill did not say anything about child pornography being on the phone. Defendant knew this information was false, as explained above, because the phone was repeatedly and regularly used to search for child pornography, including that same day (February 3, 2017).

Similarly, as a result of the false sworn statements that defendant submitted to this Court, defendant does not qualify for acceptance of responsibility under Guideline § 3E1.1. Instead of demonstrating a recognition and affirmative acceptance of personal responsibility for his criminal conduct, the defendant provided false information to escape responsibility. In doing so, defendant implicitly alleged that the probation officer supervising his case was being untruthful and invited the Court to find as such despite knowing that his affidavit was false. The Seventh Circuit has

12

made clear that an enhancement under Guideline § 3C1.1 results in a presumption that the defendant should not receive credit for acceptance of responsibility, but that this presumption is rebuttal in extraordinary cases. *See United States v. Pons*, 795 F.3d 745, 747 (7th Cir. 2015); U.S.S.G. § 3E1.1, cmt. n. 4. This is simply not an extraordinary case and defendant should not receive acceptance of responsibility credit

These enhancements are warranted and just. The defendant possessed and hid a prohibited cellphone in order to download thousands of files of child pornography through an underground computer service, in a further effort to conceal his conduct. Defendant's crimes contributed to the perpetual victimization of numerous children by contributing to the ever-growing market of creation and distribution of child pornography. The nature and circumstances of the offense support a sentence within the appropriately calculated Guidelines range.

## B. History and Characteristics of the Defendant

The most aggravating factor is the defendant's prior federal child pornography conviction. In November 2017, the defendant stood before Judge Gottschall at sentencing and stated that he had changed significantly. Defendant argued that he was not at risk to recidivate and stated:

> Prison is not a place made for somebody like me. I'm not a monster that society needs to be protected from. I'm not a hardened criminal that needs to spend the next 5 or 10 or 20 years behind bars to keep me from committing more crimes. Put simply, I'm a man who made some really bad decisions.

13

The court accepted defendant's arguments and sentenced the defendant to time served, 65 months, truly giving the defendant a second chance. Despite this second chance, the defendant possessed child pornography within two years of his release from prison.

Based on the totality of defendant's history and characteristics, a sentence within the Guidelines range is sufficient, but not greater than necessary, to accomplish the goals of sentencing.

### C. Need for the Sentence Imposed to Reflect the Seriousness of the Offense, Promote Respect for the Law, and Provide Just Punishment as well as Adequate Deterrence

The need for defendant's sentence to reflect the seriousness of his offense is crucial here where defendant has minimized his conduct, demonstrating disregard for the gravity of the harm he has caused and no remorse.

Defendant's history on supervised release shows that he has consistently pushed the boundaries and violated court-imposed conditions, which highlights the need for a sentence that promotes respect for the law and provides an adequate deterrent.

The sentence here should also provide just punishment, promote respect for the law and deter others as well as defendant. Possession of child pornography is an extraordinarily serious offense that threaten the safety of our children and communities. By possessing child pornography, defendant perpetuated the victims' abuse and helped to preserve a permanent record of it. Congress has concluded that this

14

conduct warrants a significant prison term. Many courts have explained why. In *United States v. Goldberg*, the Seventh Circuit reversed the sentence imposed by the district court judge in a child pornography possession case. In so doing, the Seventh Circuit stated,

> The district judge was influenced by the erroneous belief that a sentence affects only the life of the criminal and not the lives of his victims. Young children were raped in order to enable the production of the pornography that the defendant both downloaded and uploaded – both consumed himself and disseminated to others. The greater the customer demand for child pornography, the more that will be produced. Sentences influence behavior, or so at least Congress thought when in 18 U.S.C. § 3553(a) it made deterrence a statutory sentencing factor. The logic of deterrence suggests that the lighter the punishment for downloading and uploading child pornography, the greater the customer demand for it and so the more will be produced.

491 F.3d 668, 672 (7th Cir. 2007) (citations omitted).

A significant period of incarceration is necessary to deter defendant and others from committing similar crimes in the future, to promote respect for the law, and to protect the public. These factors therefore support a custodial sentence within the Guidelines range.

## IV. RESTITUTION

The defendant has agreed to pay restitution in the amount of $1,500 to Victim A. The government has provided contact information for the attorney for Victim A to the probation officer.

## V.    GOVERNMENT'S POSITION ON SUPERVISED RELEASE

Consistent with Probation's recommendation, the government recommends that the Court impose a life term of supervised release. In order to promote the sentencing objectives of deterring recidivism, protecting the public, and assisting in defendant's rehabilitation and reintegration into society, the government supports Probation's recommendation that the term of supervised release include the conditions set forth below.

Specifically, the government agrees that the mandatory conditions of supervised release proposed by the Probation Department should be imposed because they are required by Title 18, United States Code, Section 3583(a), and recommended by U.S.S.G. § 5D1.3(a).

The government also agrees that the discretionary conditions of supervised release proposed by the Probation Department should be imposed, as such discretionary conditions will serve to facilitate supervision by the Probation officer, support defendant's rehabilitation and reintegration into society, and serve to promote deterrence and protect the public, and are thus appropriate in this case.

Lastly, the government agrees with the special conditions of probation proposed by the Probation Department in the PSR, which further support defendant's reintegration into society.

16

## VI.    CONCLUSION

For the foregoing reasons, the government respectfully requests that this Court impose a custodial sentence within the Guidelines range and a life term of supervised release with conditions, and order restitution to Victim A.

Respectfully submitted,

JOHN R. LAUSCH, JR.
United States Attorney

by:

/s/ *Tiffany A. Ardam*
TIFFANY A. ARDAM
Assistant United States Attorney
219 South Dearborn Street, Fifth Floor
Chicago, Illinois 60604
(312) 353-0951

17