IN THE
UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| | ) | |
| v. | ) | The Honorable |
| | ) | Virginia M. Kendall |
| MARK McGILL | ) | |
| | ) | No. 17 CR 149 |

**SENTENCING MEMORANDUM
AND OBJECTIONS TO PRESENTENCE REPORT**

COMES NOW Defendant Mark McGill, through his attorney Heather L. Winslow, and presents the following sentencing memorandum and objections to the presentence report. Mr. McGill states the following:

**Background**

In 2012, Mark McGill was convicted of one count of possession of child pornography and one count of distribution of child pornography following a jury trial. *United States v. McGill,* 09 CR 770. After an appeal, the Seventh Circuit reversed the conviction for distribution of child pornography, concluding that the district court erred in failing to instruct the jury on the defendant's entrapment defense. *United States v. McGill,* F.3d 452 (7th Cir. 2014). In addition, the appellate court vacated the sentence as to the possession count and remanded to matter for a new trial or resentencing. *Id.* The government declined to retry Mr. McGill on the distribution count, so the district court resentenced Mr. McGill on the possession count only. ECF Dkt. # 178 (09 CR 770). The court sentenced Mr. McGill to 65 months in the Bureau of Prisons followed by seven years of supervised release. ECF Dkt. # 178 (09 CR 770). One of the conditions of supervised

release was that Mr. McGill would submit to monitoring of his cell phone or other electronic devices.

During the course of his supervised release, Mr. McGill was supervised by Probation Officer Hence Williams. Tr. 14. On February 3, 2017, Mr. Williams arrived at Mr. McGill's home for a home visit. Tr. 24; ECF Dkt. # 38 (17 CR 149). Although the visit was not scheduled, Mr. McGill was aware that Mr. Williams would be making a home visit around that date. ECF Dkt. # 38 (17 CR 149). Mr. McGill let Mr. Williams into his home, and Mr. Williams commenced to walk through the house, as he had done on many prior occasions. ECF Dkt. # 38 (17 CR 149). When Mr. Williams entered Mr. McGill's bedroom, he noticed that there was a cell phone charging on a table near the bed. Tr. 26. Mr. Williams did not recognize that phone to be the same phone that he monitored using computer monitoring software. Tr. 27. He asked Mr. McGill about the phone, and Mr. McGill told him that it was his old cell phone. Tr. 29. Mr. McGill stated that the phone no longer worked and that he only used it to charge a spare battery. Tr. 29. Mr. Williams then seized the phone. Tr. 50.

Mr. Williams eventually turned the phone over to the FBI and the government obtained a search warrant to view the contents of the phone. The government charged that the phone contained upwards of 600 images of child pornography.

On March 7, 2017, the Grand Jury returned an indictment charging Mr. McGill with one count of possession of an object containing child pornography.

On May 12, 2017, Mr. McGill filed a motion to suppress the charged cellphone. Mr. McGill argued that the seizure, and subsequent search of the phone, was unlawful because the mere possession of an unmonitored cellphone did not establish reasonable suspicion to believe that he had violated the conditions of his supervised release or was committing a crime.

2

After filing his motion to suppress, Mr. McGill filed a personal affidavit with the Court. In relevant part, Mr. McGill's affidavit stated the following:

> H.W. came to my house on February 3, 2017, for a home visit. The exact time of H.W.'s visit was not scheduled, but I knew that he would be coming to my house around that date.

> When he arrived, I let H.W. into the house. H.W. walked through the house, as he had done every time he had visited me at home in the past.

> When H.W. came into my bedroom, he saw a cell phone charging on a table near my bed. H.W. asked me about the phone, and I told him that it was my old cell phone. I explained that the phone no longer worked and that I only used it to charge a spare battery. I took the battery out of the phone to show H.W. that it was the same battery that fit my current phone.

> After I took the battery out, H.W. asked me to put the battery back in the phone and I did so. I then handed the phone to H.W. so he could see that I had put the battery back in the phone.

> H.W. then tried to turn the phone on but was unable to do so. The phone would not turn on.

> H.W. then told me that he was taking the phone.

> After he took the phone, H.W. asked me if he was going to find anything on the phone. I responded that he would, but I never said anything about child pornography being on the phone.

ECF Dkt. # 38 (17 CR 149).

This Court denied Mr. McGill's motion to suppress following a hearing.

Following the denial of the motion to suppress, Mr. McGill entered into a plea agreement with the government. By the terms of that plea agreement, Mr. McGill admitted to possessing the phone which contained images of child pornography. However, he reserved his right to appeal this Court's ruling on the motion to suppress.

The parties will appear before the Court on May 28, 2019, for sentencing. In addition to determining what sentence is sufficient, but not greater than necessary, to address the goals of criminal sentencing, as set forth in 18 U.S.C. §3553(a), this Court must resolve certain guideline

disputes between the parties. Specifically, the parties disagree as to (1) whether a four-level guideline increase for possession of images that depict sadistic-masochistic conduct or other violence is warranted; (2) whether the two-level guideline increase for use of a computer is warranted; (3) whether the two-level guideline increase for obstruction of justice is warranted; and (4) whether Mr. McGill has accepted responsibility. Mr. McGill submits that the appropriate guideline range is 51 to 63 months, based upon an offense level of 22 and a criminal history category of III. The government submits that the guideline range is 168 to 210 months, based upon an offense level of 33 and a criminal history category of III. In either case, a mandatory minimum sentence of 120 months applies.

## Legal Disputes

1. *The four-level increase for possession of sadistic-masochistic conduct or other violence should not apply.*

In the Presentence Report, Probation applies a four-level increase in Mr. McGill's base offense level for possession of materials which depict sadistic or masochistic conduct or other violence, citing U.S.S.G. § 2G2.2(b)(4). PSR at ¶ 21. Specifically, Probation submits that the four-level increase is appropriate because approximately 10 of the images found on the phone seized from Mr. McGill include depictions of generic sadistic or masochistic conduct. The government notes that at least one of the images found on the phone seized from Mr. McGill depicts an object being inserted into a young boy's anus.

While acknowledging that there is some legal precedent for application of the increase under U.S.S.G. § 2G2.2(b)(4) in this context, its application is inappropriate in this case. First, the Guidelines do not define "sadistic or masochistic conduct or other depictions of violence" as the terms are used in U.S.S.G. § 2G2.2(b)(4). However, it is a linguistic stretch to apply the

4

increase in this case based solely on the fact that one of the images found on Mr. McGill's computer contains a depictions of anal penetration. Without speculating on whether the conduct was injurious to the child, it surely was, the Guidelines very specifically used the terms sadistic, masochistic, and violence. These terms have denotations and connotations which describe conduct beyond the sexual act which brings an image within the definition of prohibited images under 18 U.S.C. § 2252A. Courts cannot increase a sentencing range on the basis of factors which are inherent in the underlying offense. *United States v. Podhorn*, 549 F.3d 552 (7th Cir. 2009). While some courts have concluded that the four-level increase applies in cases where the defendant possesses images which depict penetration of a child, Mr. McGill submits that it is improper to do so. Every child depicted in an image of child pornography is injured, by nature of the definition of the images as sexually explicit. Images which depict penetration are not so substantially more egregious that an increase of four levels is warranted. Surely the Sentencing Commission intended to punish extreme conduct more harshly when it wrote U.S.S.G. § 2G2.2(b)(4). To apply the increase in every case, even in ones in which the images cannot properly be said to depict anything that is violent, sadistic, or masochistic, as those terms are properly defined, undermines the Commission's intent and improperly increases the offense level of individuals involved in the proverbial "mine-run" case.

As more individually applied to Mr. McGill, the increase under U.S.S.G. § 2G2.2(b)(4) improperly punishes him for conduct that was not an intentional act. As Probation acknowledged in its recommendation, Mr. McGill was not regularly hitched to his computer, picking and choosing the images of his liking. Rather, he received the images in bulk from a trading site. Thus, Mr. McGill had no control over the specifics of the images he received. Conversely, the government had complete control over which images it chose to charge and include in its

government's version. Once Mr. McGill received the images from someone on the site, he could be held criminally responsible for the nature of the image even if he did not want or ever view the image.1

In cases such as Mr. McGill's, it is the norm for images to be downloaded in bulk. The images received by the end consumer are not filtered by preference and frequently contain images, such as the one identified by the government, which the user did not want. In this case, there is no evidence whatsoever that Mr. McGill sought out or favored images depicting sadistic or masochistic conduct. Rather, it appears that the images which would permit the application of the four-level increase in the offense level were merely a part of a mass distribution.

In light of the fact that there is no evidence that Mr. McGill sought out or intended to possess images containing sadistic or masochistic conduct, Mr. McGill submits that application of the four-level increase under U.S.S.G. § 2G2.2(b)(4) is improper.

2. *The two-level increase for use of a computer should not apply.*

In the Presentence Report, Probation applies a two-level increase for the use of a computer in the commission of the offense. PSR at ¶ 22-23. However, as noted in Probation's recommendation, the application of this increase is antiquated. Almost all offenses of possession of child pornography involve the use of a computer in this age of computer access.

Mr. McGill did not employ any special computer techniques or access, such as the so-called darkweb, to commit his crime. Therefore, the two-level increase is excessive in this case. Mr. McGill's conduct was no more egregious than virtually any other offender

---

1 Although the application notes to U.S.S.G. § 2G2.2(b)(4) address this issue, the Court has discretion to consider whether the enhancement should be applied in Mr. McGill's case or whether an adjustment should be made under 18 U.S.C. § 3553(a).

contemplated by the Sentencing Commission in establishing these guidelines. Therefore, it is excessive to increase Mr. McGill's offense level for conduct which is contemplated by the base offense level.

     3.   *The two-level increase for obstruction of justice should not apply.*

The government submits that the two-level increase for obstruction of justice should apply in this case because Mr. McGill submitted an affidavit in support of his motion to suppress in which he detailed the events leading up to the seizure of the cell phone on which images of child pornography were found. Specifically, the government argues that the statements in the affidavit "would tend to influence or affect the issue under determination." *Citing United States v. DeLeon*, 603 F.3d 397, 404 (7th Cir. 2010). The government goes on to argue that Mr. McGill's affidavit forms the basis of the obstruction enhancement because "he used the cellphone just hours before it was seized to search for images of young boy's penises." Gov. Version at 7.

The government's argument misunderstands the purpose of a motion to suppress and the effect of Mr. McGill's affidavit. The affidavit was submitted to set forth the facts regarding what happened before the cell phone was seized. What the phone was used for prior to the seizure, or what was found on the phone at a later time, were facts that were entirely immaterial to the issue of suppression. Mr. McGill's statements regarding the location of the cell phone were not discredited by this Court. The question before the Court was whether Mr. Williams had reasonable suspicion to seize the cell phone under the conditions of Mr. McGill's supervised release. Thus, the motion to suppress presented a legal question, not a factual one. And the Court's ruling on the issue did not turn on whether anything in Mr. McGill's affidavit was materially false because the affidavit was intended only to inform the Court of Mr. McGill's

7

recollection of the events preceding the seizure of the cell phone. In its ruling, the Court concluded that the seizure of an unmonitored cell phone, which was in plain sight, was reasonable and legally justified.

Had Mr. McGill disputed the facts surrounding the seizure of the cell phone, the government's point might have some merit. But, in the context of this case, it does not. In effect, the government argues that, had Mr. McGill made a different argument, his affidavit may have had some effect on the issue under determination. In determining whether the affidavit did, or could have had, a material effect on the issue under determination, this Court considers what issues were actually to be determined, not what issues could hypothetically have been presented for determination had Mr. McGill made some other argument. The government's argument fails to acknowledge that the issue under determination could not have been affected by Mr. McGill's affidavit because it was one of law and not fact.

In light of the purpose of the affidavit submitted by Mr. McGill and the narrow basis for the motion to suppress, Mr. McGill submits that his statement was one in furtherance of his exercise of a constitutional right, specifically, the right to challenge unconstitutional searches and seizures under the Fourth Amendment. As such, it is not the type of statement that should be considered obstructive unless materially false. U.S.S.G. § 3C1.1 (application note 2).

Therefore, Mr. McGill submits that the two-level guideline increase for obstruction of justice should not apply.

### 4. *Mr. McGill should be given credit for acceptance of responsibility.*

Closely related to the question of obstruction of justice is the question whether Mr. McGill should receive credit for acceptance of responsibility. Both Probation and the government argue that he should not receive credit for acceptance of responsibility in light of the

8

obstruction of justice enhancement. Neither offers a separate reason for denying Mr. McGill credit for acceptance of responsibility.

As discussed above, Mr. McGill moved to suppress the cell phone in question because he believed that Mr. Williams had no reasonable suspicion to seize the phone. This is an entirely legal argument which is properly submitted to the Court for resolution. U.S.S.G. § 3E1.1 (application note 4) and U.S.S.G. § 3C1.1 (application note 2).

Mr. McGill has otherwise met all of the requirements for the application of the acceptance of responsibility reduction. He entered a timely plea of guilty. He did not put the government to its burden of proof at trial. And he has not falsely denied any conduct related to the charge.

Therefore, Mr. McGill submits that he should receive a three-level reduction in his offense level for acceptance of responsibility.

## II.    Sentencing Memorandum

The primary directive in § 3553(a) is that the Court must impose a sentence that is "sufficient, *but not greater than necessary*, to comply with" the purposes of sentencing. *See* 18 U.S.C. § 3553(a) (emphasis added).   Those purposes include the need

- to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment;

- to create adequate deterrence;

- to protect the public from future crimes of the defendant; and

- to provide the defendant with necessary treatment and training. § 3553(a)(2).

Section 3553(a) directs sentencing courts to consider a number of additional factors as well, including

- the nature and circumstances of the offense, § 3553(a)(1);

- the history and characteristics of the defendant, § 3553(a)(1);

- the kinds of sentences available, § 3553(a)(3);

- the sentencing guideline range, § 3553(a)(4);

- pertinent Sentencing Commission policy statements, § 3553(a)(5);

- the need to avoid unwarranted sentencing disparities, § 3553(a)(6).

The sentencing guidelines are only one factor to be considered by the Court in fashioning the appropriate sentence. *United States v. Carter*, 530 F.3d 565 (7th Cir. 2008). Courts are free to disagree with the guidelines and vary from the advisory range based on the facts of the individual case, so long as they act reasonably. *United States v. Page*, 601 F.3d 743 (7th Cir. 2010). Based on all of the factors to be considered by this Court under 18 U.S.C. § 3553, Mr. McGill submits that a sentence of 120 months is sufficient but not greater than necessary to comply with the purposes of sentencing.

A. *Nature of Circumstances of the Offense*

Mr. McGill has acknowledged that he possessed the cell phone in which images of child pornography were discovered following the seizure of the phone by Mr. Williams. While Mr. McGill fully acknowledges that his crime is a serious one, he also asks the Court to consider that there is no evidence that Mr. McGill ever created any images of pornography or personally harmed any of the children depicted in the images – or any other child.

Mr. McGill has a prior conviction for similar conduct and fully acknowledges that he is in need of treatment and counseling to address his sexual attraction to images of minors.

10

*B.  History and Characteristics of the Defendant*

Mr. McGill's history of unstable family life and abuse as a child is well documented in the Presentence Report. It serves no purpose to reiterate all of the facts in this public filing. However, the effect of the abuse that Mr. McGill suffered bears some comment.

As the Presentence Report sets out, Mr. McGill suffered from abuse throughout his childhood. He was alternately abused and ignored by both of his parents. He was abused by older relatives and neighbors. According to Dr. Ostrov's report, referenced in the Presentence Report, Mr. McGill's history of being abused has resulted in his being emotionally immature and insecure, manifesting in his under-achievement and solitary lifestyle. In addition, the abuse that he suffered resulted in sexual insecurities and to his admitted attraction to young men and boys.

Mr. McGill was receiving some treatment and counseling to deal with the effects of his abusive childhood and the resulting problems in his adult life at the time of the offense. But that treatment was intermittent and clearly insufficient to address the root causes and severity of Mr. McGill's issues. If this Court were to impose a sentence within the range contemplated by the guidelines, it would preclude any meaningful treatment for at least the next 13 years. The sentence recommended by the defense would allow Mr. McGill the best chance of benefitting from treatment by requiring that he begin sex offender treatment within the next five years. In light of Mr. McGill's current feelings of remorse and guilt, along with the insight brought about by this prosecution, a sentence of 120 months would best reflect Mr. McGill's individual history and characteristics and protect the public by ensuring that he receive treatment when he is most amenable to it.

*C.  The Kinds of Sentences Available/Disparity*

The mandatory minimum sentence in this case is 120 months. The parties disagree as to

the guideline range. According to Probation and the government, the guideline range is 168 to 210 months. Mr. McGill submits that the guideline range is more properly calculated at 51 to 63 months (offense level 22 and criminal history category III). Thus, the mandatory minimum sentence that Mr. McGill must receive is already twice the appropriate guideline range as calculated by the defense.

In this case, imposing a sentence which is more than twice the length contemplated by the Sentencing Commission would promote disrespect for the law. The Sentencing Commission has determined that 51 to 63 months incarceration was just punishment for distribution of child pornography in a case such as Mr. McGill's. Thus, the imposition of a mandatory minimum sentence of 120 months already creates a disparity of twice the appropriate guidelines. Imposing a sentence above that threshold would serve to unnecessarily increase that disparity and would result in a sentence which is unjustifiable under the law.

Finally, the mandatory minimum sentence of 120 months is nearly twice the sentence that Mr. McGill received before. A sentence of this length clearly satisfies the statutory mandate that a sentence reflect the seriousness of the offense and provide individual and general deterrence.

### D. Sentencing Recommendation

The current philosophy of punishment is retributive rather than rehabilitative. Nonetheless, neither the Guidelines nor Congress endorse needless incarceration for the sake of general deterrence. And both Congress and the Sentencing Commission explicitly recognize that excessive incarceration undermines the ultimate goal of lawful reintegration to the community. Similarly, both require sentencing courts to consider the facts of each individual case and to determine what sentence will best accomplish that goal.

In light of the various mitigating factors in this case, such as Mr. McGill's history of abuse

12

and amenability to treatment, Mr. McGill asks this Court to impose a sentence of no more than 120 months incarceration.

　　　　WHEREFORE, Mr. McGill respectfully moves this Court to adopt the sentence recommended by Mr. McGill and impose a sentence of 120 months.

Respectfully submitted,

　/S/ Heather L. Winslow
Heather L. Winslow
Attorney for Mark McGill

HEATHER L. WINSLOW
53 West Jackson Blvd., Ste. 831
Chicago, IL 60604
(312) 322-0017

**CERTIFICATE OF SERVICE**

The undersigned, Heather L. Winslow, hereby certifies that the following document(s):

**SENTENCING MEMORANDUM
AND OBJECTIONS TO PRESENTENCE REPORT**

was served on May 16, 2019, in accordance with FED.R.CIV.P.5, LR5.5, and the General Order on Electronic Case Filing (ECF), pursuant to the district court's ECF system as to ECF filers, and if any, were sent by first-class mail or by hand delivery to non-ECF filers.

14